NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| MARIA TORRES, | Civil Action No.: 10-4623 (JLL) |
| Plaintiff, | **OPINION** |
| v. | |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

**LINARES**, District Judge

      Presently before the court is an appeal by Plaintiff Maria Torres seeking review of a final determination by Administrative Law Judge ("ALJ") Leonard Olarsch denying her application for disability insurance benefits pursuant to §§ 216(i), 223(d), and 1614(a)(3)(A) of the Social Security Act. This Court has considered the submissions made in support of and in opposition to the instant appeal and the arguments placed on the record on November 11, 2011. For the reasons set forth below, the Court finds that the ALJ's determination is supported by substantial evidence.

I.    FACTS AND PROCEDURAL HISTORY

      On October 30, 2006, Plaintiff applied for Title II Social Security Disability Insurance Benefits alleging disability after her back surgery beginning on April 28, 2005. The ALJ initially denied the claim, and the Appeals Council denied it again upon reconsideration. On September 3, 2009 a hearing was held before ALJ Olarsch who found that Plaintiff was not disabled under 216(i) and 223(d) of the Social Security Act.

At the time of the hearing Plaintiff was fifty (50) years old. (R. at 21.) She came to this country from the Dominican Republic where she attended school until the eighth grade. (P. Brief at 3.) Plaintiff is currently separated from her husband, and lives with one of her two sons, Guillermo. (Id.) She worked in the hotel industry as a housekeeper from 1998 until April of 2005. (R. at 120.) This job generally required her to to walk for two hours, stand for five hours, and sit for one hour on a daily basis. (Id. at 123.) This job also required her to be able to lift a maximum of 50 pounds, and to frequently lift 25 pounds. (Id.) On April 5, 2005, an MRI of Plaintiff's lumbar spine revealed a disc herniation at L5/S1. (Id. at 173). On April 19, 2005 she claims that while pushing a housecleaning cart at work she felt pain in her lower back. (R. at 290.) On July 12, 2005, Plaintiff underwent low back surgery that consisted of a discectomy at L5-S1. (Id.) Plaintiff never returned to work following the surgery. (Id.)

On July 27, 2005, Dr. Marc Arginteanu, Plaintiff's treating neurosurgeon, examined Plaintiff as a follow up to her back surgery. (Id. at 188.) Dr. Arginteanu stated that Plaintiff was doing well with resolution of her preoperative radicular pain, and instructed her to seek postoperative physical therapy. (Id.) On August 17, 2005, Plaintiff visited Dr. Eduardo Miguel for a physical examination. (Id. at 201.) Dr. Miguel reported that Plaintiff was happy with her back surgery. (Id.) In 2007, Dr. Richard Mills - a state agency examiner - wrote that Plaintiff was able to put her shoes on and off, shuffle papers, and ascend and descend the exam table. (Id. at 273.) The only indications of severe pain during this examination came from Plaintiff's claims. (Id.) In April 2008, pursuant to Plaintiff's application for reconsideration, Dr. Morris Susman, state agency medical consultant, reviewed the administrative record and determined that Plaintiff's back problems did not constitute a severe impairment. (D. Brief at 9.) On September 30, 2008, Plaintiff underwent physical and neurological evaluations for workman's compensation proceedings. (Id. at 292, 296.) For the neurological evaluation Dr. Cheryl Wong concluded that

Plaintiff had neurological impairment estimated at 37 1/2 %, and psychiatric impairment of 25%. (Id. at 292.) For the physical evaluation Dr. Theodora Maio concluded that Plaintiff had a permanent orthopedic disability of 66 2/3 %. (Id. at 296.) Both examinations from these physicians were done using the guidelines of a workman's compensation claim, and both reports explicitly state that their evaluations are solely for the purpose of workman's compensation claims and for no other purpose. (Id. 292, 296.) Plaintiff testified that she was ultimately denied workman's compensation because she was not in a union and was therefore ineligible. (Id. at 25.)

II.     Legal Standard

Pursuant to the Social Security Act, a claimant is required to show that she is disabled based on her inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). Taking into consideration her age, education, and work experience, disability will be evaluated by the claimant's ability to engage in any form of substantial gainful activity existing in the national economy. Id. at § 423(d)(2)(A). If she can perform substantial gainful activity within the national economy, then she will not be considered disabled. Id. Each claimant's disability is determined individually based on evidence adduced at a hearing. See Sykes v. Apfel, 228 F.3d 259, 263 (3d Cir. 2000) (citing Heckler v. Campbell, 461 U.S. 458, 461 (1983)); 42 U.S.C. § 405(b)(1).

The Social Security Administration has developed a five-step process laid-out in the Code of Federal Regulations for evaluating the legitimacy of a plaintiff's disability. 20 C.F.R. § 404.1520. At step one, a plaintiff must establish that she is not currently engaging in substantial gainful activity. Id. at § 404.1520(a)(4)(i). If the plaintiff is engaged in substantial gainful activity, the claim for disability benefits will be denied. Id.; see also Plummer v. Apfel, 186 F.3d

422, 428 (3d Cir. 1999) (citing Bowen v. Yuckert, 482 U.S. 137, 140 (1987). At step two, if plaintiff is not working, she must establish that she suffers from a severe impairment. 20 C.F.R. § 404.1520(a)(4)(ii). If plaintiff fails to demonstrate a severe impairment, the ALJ must deny disability benefits. Id.

If plaintiff suffers a severe impairment, step three requires the ALJ to determine, based on the medical evidence, whether the impairment matches or is medically equivalent to a listed impairment found in the "Listing of Impairments" located in 20 C.F.R. § 404, Subpart P, Appendix 1. Id. at 404.1520(a)(4)(iii); see also Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 118 (3d Cir. 2000). If it does, plaintiff is automatically disabled. 20 C.F.R. § 404.1520(d). The Third Circuit has required that, in determining whether a plaintiff's impairments meet or equal any of the listed impairments, the ALJ identify relevant listed impairments, discuss the evidence, and explain his reasoning. See Burnett, 220 F.3d at 119-20. Conclusory statements at this step of the analysis are inadequate and render the decision "beyond meaningful judicial review." Id. at 119. If plaintiff does not suffer from a listed severe impairment or an equivalent, the ALJ proceeds to step four. At step four, the ALJ must consider whether plaintiff "can still do [her] past relevant work." 20 C.F.R § 404.1520(a)(4)(iv).

> This step involves three substeps: (1) the ALJ must make specific findings of fact as to the claimants residual functional capacity; (2) the ALJ must make findings of the physical and mental demands of the claimant's past relevant work; and (3) the ALJ must compare the residual functional capacity to the past relevant work to determine whether the claimant has the level of capability needed to perform the past relevant work.

Burnett, 220 F.3d at 120.

Plaintiff "bears the burden of proof for steps one, two, and four of [the five-step] test. Sykes, 228 F.3d at 263. Neither side bears the burden of proof in step three because "step three

4

involves a conclusive presumption based on listings." Id. at 263 n.2 (citing Yuckert, 482 U.S. at 146-47 n.5).

If plaintiff is unable to perform their past work, the analysis continues to step five. In this final step, the burden of production shifts to the Commissioner to determine whether there is any work in the national economy that a plaintiff can perform based on age, education, and physical ability. C.F.R § 404.1520(a)(4)(v); see also Sykes, 228 F.3d at 263. In showing that there is existing employment in the national economy that plaintiff can perform, the ALJ must use the medical-vocational guidelines (the "grids") from Appendix 2 of the regulations, which consider age, physical ability, education, and work experience. 20 C.F.R § 404, Subpt. P, App. 2., see also Burnett, 220 F.3d at 126 ("A step five analysis can be quite fact specific, involving more than applying the Grids, including... testimony of vocational expert.") If this evidence establishes that there is work that plaintiff can perform, then he is not disabled.

A. Standard of Review

"Substantial Evidence" is the standard of proof in disability insurance benefit cases. Substantial evidence is "more than a mere scintilla" of evidence and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971); see also Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992). The court has a duty to review the evidence in its totality and decide whether the ALJ's determination was reasonable. See Daring v. Heckler, 727 F.2d 64, 70 (3d Cir. 1984). The court gives deference to the administrative findings and decision, but it also must "scrutinize the record as a whole to determine whether the conclusions reached are rational" and supported by substantial evidence. See Gober v. Mathews, 574 F.2d 772, 776 (3d Cir. 1978). However, the court is not "empowered to weigh the evidence or substitute its conclusions for those of the

[ALJ]." Sullivan, 970 F.2d at 1182. To assist the court in this process, an ALJ must explain the rationale behind his decision. In addition, where there is conflicting medical evidence, the ALJ must adequately explain in the record his reasons for rejecting competent evidence. Brewster v. Heckler, 786 F.2d 581, 585 (3d Cir. 1986).

III.    Discussion

    A.    Summary of the ALJ's Findings

At step one of the five step process the ALJ found that Plaintiff had not engaged in substantial gainful activity since the onset of her alleged disability in July 2005. (R. at 15.) At step two the ALJ found that Plaintiff had the following severe impairment: status post discectomy. (Id.) However, at step three, the ALJ found that this impairment does not meet or medically equal any of the listed impairments after giving particular consideration to the listings for Disorders of the Spine such as spinal stenosis, nerve root or spinal chord progression found in section 1.04. (Id.)

At step 4 the ALJ, in considering all of Plaintiff's symptoms and the extent to which they can reasonably be accepted as consistent with the objective medical evidence, used a 2-step process to determine that Plaintiff had the Residual Functional Capacity ("RFC") to perform a full range of medium work. (Id. at 15-16.) First, the ALJ determined that Plaintiff's medically determinable impairment could reasonably be expected to cause the alleged symptoms. (Id. at 16.) Second, the ALJ determined that Plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms were not credible to the extent that they were inconsistent with his above residual functional capacity assessment.(Id.) Further, diagnostic findings after Plaintiff's surgery, made by her treating neurosurgeon, Dr. Arginteanu, reported resolution of radicular pain. (Id.) The ALJ also considered the fact testified to by Plaintiff at the hearing that

6

she had ceased taking any prescription medications and was at that point only relying on over-the-counter medications. (Id.)

Further, in his considerations, the ALJ relied on the 2007 state agency examination by Dr. Mills that indicated that Plaintiff was able to take her shoes on and off and negotiate the exam table without difficulty. (Id.) Although this physical examination also showed that pinprick sensation was down to 80% of normal on the lower left extremity, the ALJ notes that the examination otherwise reported unremarkable reflexes, some cervical spasm, intact range of motion (except for moderate lumbar range), normal grip strength, normal use of hands, moderate range of motion limitations of the neck, and mildly positive straight leg raising. (Id.) This examination also stated that Plaintiff is able to walk on heels and toes, is unable to squat due to pain, but exhibits no other limitations. (Id.) Finally, this examination produced an x-ray that showed mild narrowing of L5-S1, but otherwise normal findings. (Id.) The ALJ gave brief consideration to the worker's compensation examinations of Dr. Maio and Dr. Wong, but dismissed their findings as contrary to the record. (R. at 17.)

After determining Plaintiff's RFC in the first part of step four, the ALJ then determined that with the capacity to perform a full range of medium work, Plaintiff was able to perform her past job as a hotel housekeeper. (Id. at 17.) The ALJ based this finding upon Plaintiff's reports that her past job required her to lift between 20 and 50 pounds and perform the normal requirements of housekeeping. (Id.) As the ALJ determined that Plaintiff was not disabled because she maintained the residual functional capacity to perform her old job as a hotel housekeeper, he ended the 5-step test at step 4.

    B.    Analysis

Plaintiff argues that the ALJ erred in five respects. First, Plaintiff contends that the ALJ committed a reversible error by ignoring the substantial credible evidence presented by Plaintiff. Second, Plaintiff asserts that the ALJ committed a reversible error by improperly discrediting the effects of her pain as expressed by her symptomatology. Third, Plaintiff contends that the ALJ failed to properly evaluate and weigh the medical opinion of Dr. Richard Mills. Fourth, Plaintiff contends that the ALJ committed reversible error in failing to comply with Social Security Regulation 96-7P concerning the evaluation of pain. Finally, Plaintiff contends that the ALJ erred by improperly applying medical-vocational guidelines and failing to obtain a vocational expert's testimony in light of the presence of non-exertional limitations.

### 1. Weight of Substantial Evidence

The first issue before the court is whether throughout the five-step test the ALJ ignored the weight of the substantial evidence as presented by Plaintiff. Substantial evidence is "more than a mere scintilla" of evidence and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Perales, 402 U.S. at 401; see also Sullivan, 970 F.2d at 1182. The court gives deference to the administrative findings and decision, but it also must "scrutinize the record as a whole to determine whether the conclusions reached are rational" and supported by substantial evidence. See Mathews, 574 F.2d at 776. However, the court is not "empowered to weigh the evidence or substitute its conclusions for those of the [ALJ]." Sullivan, 970 F.2d at 1182.

It is clear that a rational mind could find that the evidence in this case supports the ALJ's ultimate conclusion. The ALJ specifically used the findings of Plaintiff's treating neurosurgeon, Dr. Argenteanu, and the findings of Dr. Miguel's physical exam shortly thereafter which found that Plaintiff's symptoms were resolved and with no abnormal findings. (R. at 16.) Further the

ALJ relies on the fact that Plaintiff testified that she had stopped taking any prescription medication and was relying simply on Tylenol-type over-the-counter medications. (Id.) Finally, The ALJ cites a medical examination by state agency examiner, Dr. Mills, in which Plaintiff put on and off her shoes, negotiated the examination table without difficulty, and was able to walk on her heels and toes. (Id. at 16-17.) This evidence is sufficiently capable of supporting the ALJ's conclusion that Plaintiff is not disabled.

### 2. Use of Social Security Regulation 96-7P

Plaintiff contends that the ALJ did not use or cite Social Security Regulation 96-7P in assessing Plaintiff's credibility concerning her subjective complaints of pain:

> The purpose of [SSR 96-7P] is to clarify when the evaluation of symptoms, including pain, under 20 CFR 404.1529 and 416.929 requires a finding about the credibility of an individual's statements about pain or other symptom(s) and its functional effects; to explain the factors to be considered in assessing the credibility of the individual's statements about symptoms; and to state the importance of explaining the reasons for the finding about the credibility of the individual's statements in the disability determination or decision.

(S.S.R 96-7P)

This issue is without merit, as the ALJ does in fact cite to and use SSR 96-7P in his decision. (R. at 15.) The ALJ cites to several examples of objective medical evidence in line with this regulation, as well as other types of evidence highlighted by SSR 96-7P, such as use of medications. (R. at 16.)

### 3. Credibility of Plaintiff and Evaluation of Pain

Plaintiff contends that the ALJ improperly discredited her contention that her pain was "totally disabling." In considering the credibility of a plaintiff's subjective complaints, the ALJ should give weight to factors such as the medical reports, a plaintiff's daily activities, duration and intensity of symptoms, and treatments that have been used to relieve symptoms. 20 C.F.R §

9

404.1529(c). Furthermore, the ALJ must consider the entire record and give specific reasons for the weight given to each statement. In his considerations the ALJ determined that Plaintiff's assertions of pain were not credible based on the following: 1) Plaintiff's claims of pain are inconsistent with the residual functional capacity assessment based on objective medical evidence; 2) Plaintiff's treating neurosurgeon - Dr. Arginteanu - reported resolution of radicular pain; 3) Plaintiff reported only using over-the-counter medications; 4) At a state agency exam in 2007, Plaintiff was able to put on and take off shoes, negotiate the examination table without difficulty, and walk on heels and toes. (R. at 16.) While Drs Maio, and Wong provide some conflicting opinions, the ALJ determined that the medical opinions of these doctors were inconsistent with the greater weight of the credible medical evidence. Further, both of the doctors' examinations were for the sole purpose of a worker's compensation claim, and explicitly for no other purpose. (Id. at 290-94.)

As a result, the ALJ determined that although Plaintiff suffered from some impairments, the "intensity, persistence and limiting effects" of Plaintiff's impairment did not medically equal a listed impairment or preclude her from working her past job as a hotel housekeeper. (Id. at 16.) Accordingly, this Court finds that the ALJ's determination of plaintiff's credibility is based on substantial evidence.

### 4. Medical Opinion of Doctor Richard Mills

Plaintiff contends that the ALJ erred in his dismissal of the medical opinion rendered by Dr. Richard Mills because this evidence credibly supports her claim of severe disability. Plaintiff claims that the ALJ essentially ignored Dr. Mills' diagnosis and assessment of Plaintiff's limitations. Such is clearly not the case in reading the ALJ's opinion:

> A February 2007 state agency consultative examination indicated that the claimant was able to take her shoes on an off, and to negotiate the examination table without difficulty.

> The claimant reported that the surgery did help her to relieve her back pain somewhat. Physical examination indicated a decrease in pinprick sensation down to 80% of normal on the lower left extremity. Otherwise, the examination noted unremarkable reflexes, some cervical spasm, intact range of motion except for moderate lumbar range of motion limitations, normal grip strength, normal use of the hands, moderate range of motion limitations of the neck, and mildly positive straight leg raising. The claimant is able to walk on her heels and toes, is unable to squat due to pain, and exhibits no other limitations. Related x-ray findings indicate mild narrowing at the L5-S1 but otherwise normal findings (Exhibit 6F).

(R. at 16-17.)

It is apparent that the ALJ not only gave particular attention to the medical evaluation of Dr. Richard Mills, but seemingly relied heavily on this evidence in making his decision. While there are certainly aspects of Dr. Mills's evaluation that support Plaintiff's claim, the ALJ examined the entire evaluation and determined that the balance of the medical evidence supported his determination that Plaintiff had the RFC to perform her prior job as a housekeeper. (Id.) While Plaintiff might disagree with the ALJ's evaluation of the weight of this evidence, there is sufficient evidence to support the ALJ's conclusion.

5. Step five- Use of Medical-Vocational Guidelines and Expert.

Plaintiff contends that the ALJ erred in his determination of Plaintiff's RFC by failing to use the medical-vocational guidelines and a vocational expert to help evaluate Plaintiff's non-exertional pain limitations as part of the fifth step. This argument is without merit. First, the medical-vocational guidelines and vocational experts are only used as part of a step five analysis when the ALJ must determine if Plaintiff can hold any job in the national economy. Sykes, 228 F.3d at 263. In contrast, the determination of a plaintiff's RFC occurs at step four, and does not require the use of such guidelines or experts. Therefore, the ALJ did not err in failing to use the medical-vocational guidelines or a vocational expert as part of his step four determination of Plaintiff's RFC. As the ALJ determined that Plaintiff had the proper RFC to return to her past

work he never needed to reach step five. Thus any contention that the ALJ improperly failed to use a vocational expert is meritless. 20 C.F.R § 404.1520(a)(4) ("If [the ALJ] can find that you are disabled or not disabled at a step, [the ALJ] make[s] [this] determination or decision and we do not go on to the next step.")

IV.     Conclusion

For the reasons discussed above, the ALJ's decision that Plaintiff was not disabled within the meaning of the Social Security Act since 2005 was supported by substantial evidence. The decision of the ALJ is hereby affirmed. An appropriate order accompanies this Opinion.

DATED: December 14, 2011                          /s/ Jose L. Linares
                                                  JOSE L. LINARES
                                                  UNITED STATES DISTRICT JUDGE